ESTATE OF LUCIEN J. LE CAER, DECEASED, LORRAINE LE CAER-DOMINI, CO-TRUSTEE AND DENISE LE CAER STAGNER, CO-TRUSTEE, PETITIONER *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ESTATE OF MARIE L. LE CAER, DECEASED, LORRAINE LE CAER-DOMINI, CO-TRUSTEE AND DENISE LE CAER STAGNER, CO-TRUSTEE, PETITIONER *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 29631–07, 30041–07. Filed September 7, 2010.

Husband (H) and wife (W) established an inter vivos trust that was to be split into four shares upon the death of the first spouse to die. After H's death the trustees made a qualified terminable interest property (QTIP) election with respect to a portion of one share of the trust. W received a life estate in the remaining portion of that share, but this portion purposefully did not qualify for a marital deduction. H's estate paid Federal and State estate taxes. W died less than 3 months after H died. On W's Federal estate tax return W's estate claimed the amounts that H's estate paid as Federal and State estate taxes as a credit for tax on prior transfers under sec. 2013, I.R.C. Three years after H's estate filed the return, it filed with R an additional protective QTIP election. In the notice of deficiency R disallowed the credit for tax on prior transfers on the ground that sec. 2013, I.R.C., provides that the amount of the credit is subject to the limitations of sec. 2013(b) and (c), I.R.C. R also contends the protective QTIP election was untimely. *Held*: The limitations of sec. 2013(b) and (c), I.R.C., apply. *Held*, *further*, the amount of "the taxable estate of the transferor" for the purposes of sec. 2013(b), I.R.C., is not reduced by the applicable exclusion amount. *Held*, *further*, W's estate may not claim a sec. 2013, I.R.C., credit with respect to the State estate tax that H's estate paid. *Held*, *further*, because the property interest W received from H was a life estate, the value of that property interest for purposes of the sec. 2013, I.R.C., credit is determined under valuation principles in accordance with sec. 20.2013–4, Estate Tax Regs. *Held*, *further*, the QTIP protective election is untimely when filed 3 years after the estate tax return is filed.

288

*Nick A. Moschetti, Jr.*, for petitioners.
*Wesley J. Wong*, for respondent.

## OPINION

MARVEL, *Judge*: Respondent determined a $2,400 deficiency in the Federal estate tax of the Estate of Lucien Le Caer (Mr. Le Caer) and a $227,399 deficiency in the Federal estate tax of the Estate of Marie L. Le Caer (Mrs. Le Caer). [1] After concessions, [2] the issues for decision are: (1) Whether and to what extent Mrs. Le Caer's estate may claim a credit under section 2013 for Federal estate tax paid on the transfer of property to Mrs. Le Caer from Mr. Le Caer's estate; (2) whether Mrs. Le Caer's estate may decrease the gross estate by or claim as an allowable deduction the amount of the Federal and State estate tax paid with respect to Mr. Le Caer's estate; and (3) whether the trustees of Mr. Le Caer's estate filed a valid qualified terminable interest property (QTIP) protective election and whether such election may apply to the Rule 155 computations.

## *Background*

The parties submitted this case fully stipulated under Rule 122. We incorporate the stipulated facts into our findings by this reference. Mr. Le Caer was a resident of Nevada when he died testate on January 19, 2004. Mrs. Le Caer also was a resident of Nevada when she died testate on March 29, 2004. [3] For purposes of this Opinion the estates and the cotrustees are referred to as petitioners.

Mr. Le Caer was born in 1924, and Mrs. Le Caer was born in 1923. The couple had two daughters, Lorraine Le Caer-Domini and Denise Le Caer Stagner.

On April 21, 1992, Mr. and Mrs. Le Caer, as settlors and cotrustees, executed the Lucien and Marie Louise Le Caer

---

[1] We consolidated these cases for purposes of trial, briefing, and opinion under Rule 141(a). Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the dates of decedents' deaths, and all Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2] Respondent concedes the adjustments to taxable gifts with respect to both estates. Respondent agrees with the computation of the State death tax credit allowable to both estates. Respondent also states on brief that he does not challenge the validity of the sec. 6166 elections that the estates made.

[3] The cotrustees had a mailing address in Nevada when the petitions were filed. The record does not disclose where the cotrustees resided when the petitions were filed.

1992 Family Trust Agreement. Mr. and Mrs. Le Caer subsequently executed several amendments to the trust. On February 19, 2002, Mr. and Mrs. Le Caer executed the Restated Lucien and Marie Louise Le Caer 1992 Family Trust Agreement (restated trust agreement), which governed the disposition and management of trust assets when Mr. and Mrs. Le Caer died. As settlors, Mr. and Mrs. Le Caer transferred to the trust certain property, including real estate, several accounts at Nevada State Bank, and vehicles. The restated trust agreement addressed the administration and distribution of the trust during Mr. and Mrs. Le Caer's lifetime and on the death of either spouse, irrespective of whose death occurs first. The restated trust agreement also provided for the disposition of assets upon the death of the second spouse to die.

According to the restated trust agreement, upon the death of the first spouse to die the corpus of the trust, including any additions to the trust from the will of that spouse, was to be divided into four shares (share A, share B, share C, and share D). Share A was to receive the surviving spouse's[4] separate property of the trust fund[5] and his or her interest in the community property of the trust fund. During the lifetime of the surviving spouse, the trustee would pay all or part of the net income and, in the trustee's discretion, the principal of share A, for the benefit of the surviving spouse, the couple's children, or their issue. The surviving spouse had the power of appointment over share A, and if she failed to exercise it, share A would follow the disposition of share B upon her death.

With respect to share B, the settlors intended that share B or a portion thereof would qualify for a marital deduction under section 2056. Share B was to receive property as follows:

(a) Share B shall consist of property of the trust fund in an amount equal to the maximum marital deduction as finally determined for federal estate tax purposes which is allowable under Section 2056 of the Internal Revenue Code * * * reduced by the aggregate value as finally determined for federal estate tax purposes of any property (other than property passing under this Share B) included in the * * * [estate of the first

---

[4] The phrase "surviving spouse" refers to the second spouse to die.

[5] The restated trust agreement defines "trust fund" as all property subject to the restated trust agreement.

spouse to die] for federal estate tax purposes with respect to which a marital deduction is allowable; provided, however, that such amount shall be further reduced by the amount, if any, needed to increase * * * [the taxable estate of the first spouse to die] to the largest amount which will, after application of the unified credit against the federal estate tax and the credit for state death taxes * * *, not result in any federal estate tax being imposed * * *

The trustee was to pay or apply for the benefit of the surviving spouse the income and, in the trustee's discretion, the principal, of share B. The surviving spouse had the right to invade the principal of share B in amounts not exceeding a certain annual limit. Upon the death of the surviving spouse, any accumulated share B income was to be distributed to share A.

The settlors intended that share C of the trust was to consist of any amount that would otherwise have passed under share B of the trust but which the surviving spouse disclaimed or renounced. Share D was to consist of all of the remainder of the trust fund property. The trustee was to pay the income and, in the trustee's discretion, the principal, of share D for the benefit of the surviving spouse, the couple's children, or their issue. Upon the death of the surviving spouse, the trustee was to divide shares B, C, and D among the settlors' children.

Also on April 21, 1992, in conjunction with the trust, Mr. and Mrs. Le Caer executed wills. Each will disposed of the testator's separate property and a one-half interest in the community property. After enumerated bequests, each testator devised the remainder of his or her estate to the trust. Each testator directed in the respective will that all estate taxes be paid out of the residuary estate.

In accordance with the restated trust agreement, after Mr. Le Caer died on January 19, 2004, share B was funded in the amount of $1,900,295. Share C was not funded. Share D was funded in the amount of $1,500,000.

On February 18, 2004, Mr. Le Caer's estate and Mrs. Le Caer sold vacant land and, after paying off the mortgage loan, received $489,288. On February 23, 2004, Mr. Le Caer's estate and Mrs. Le Caer sold an apartment building and, after paying off the mortgage loan, received $217,470.

On March 29, 2004, Mrs. Le Caer died.

On October 19, 2004, Mr. Le Caer's estate timely filed the Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return. The return reported a gross estate of $3,553,224, consisting of a one-half community property interest in various real estate valued at $1,925,879,[6] five bank accounts at Nevada State Bank totaling $64,474, and an account at Western National Trust Co. (Western) valued at $1,562,871. The trustees made a QTIP election under section 2056(b)(7) with respect to $1,405,295 of the assets included in Mr. Le Caer's gross estate. Accordingly, a portion of share B in the amount of $1,405,295 qualified for a marital deduction, and a portion of share B in the amount of $495,000 did not qualify for a marital deduction. Mr. Le Caer's estate reported a taxable estate of $1,995,000. After an allowable unified credit of $555,800 and a credit for State death taxes of $24,810, the estate reported tax payable of $200,190, which it enclosed with the return. Mr. Le Caer's estate also mailed a $24,810 check for the payment of the Nevada estate tax to the Nevada Department of Taxation. The estate simultaneously filed a notice of protective election under section 6166.

On November 4, 2004, a Form 706 for Mrs. Le Caer's estate was signed, and on December 7, 2004, it was mailed. The return reported a $4,976,586 gross estate consisting of Mrs. Le Caer's interest in real estate valued at $1,572,500,[7] three bank accounts at Nevada State Bank totaling $354,039, and the Western account valued at $1,639,752. Her gross estate also included personal property valued at $5,000 and the QTIP remainder of $1,405,295. Mrs. Le Caer's estate claimed a credit for tax on prior transfers of $225,000. The estate reported tax due of $1,259,596, which it enclosed with the return. The estate filed a notice of protective election under section 6166.

On December 29, 2004, an amended Form 706 for Mrs. Le Caer's estate was signed, and it was subsequently mailed. On the amended Form 706 Mrs. Le Caer's estate reported the same gross estate and credit for tax on prior transfers as it

---

[6] Mr. Le Caer's estate included in the gross estate a one-half community property interest in the vacant land and the apartment building valued consistent with the sale prices. The values herein refer to the values of the one-half community property interests in the assets.

[7] Mrs. Le Caer's estate reported the real estate using the same values used by Mr. Le Caer's estate.

had on the original Form 706. However, on the amended
Form 706 Mrs. Le Caer's estate claimed a $225,000 deduc-
tion as part of Schedule K, Debts of the Decedent, and Mort-
gages and Liens. The estate included the following narrative:

Federal Estate Taxes of decedents [sic] predeceased spouse, Lucien Jean
Le Caer * * *, who died on 1/19/2004, which taxes were fully paid by
decedent, and the gross estate of Lucien Jean Le Caer was not reduced by
his $225,000 Federal Estate tax liability/debt and no deduction was taken
on the 706 Federal Estate Tax Return filed for Lucien Jean Le Caer.

Mrs. Le Caer's estate claimed an overpayment of $101,700.

Respondent audited both estates' returns and on Sep-
tember 18, 2007, issued notices of deficiency. With respect to
each estate respondent increased taxable gifts by $5,000 and
determined the maximum allowable credit for State death
taxes. By stipulation and on brief, however, respondent con-
ceded the taxable gift adjustments and agreed with the
estates' computations of the allowable State death credits.[8]
See *supra* note 2. With respect to the amended Form 706
filed by Mrs. Le Caer's estate, respondent disallowed the
entire credit for tax on prior transfers under section 2013.
Respondent also denied the claim for refund in the amended
Form 706 of Mrs. Le Caer's estate on the ground that a
deduction for Mr. Le Caer's estate taxes is not allowable
under section 2053.

On October 19, 2007, Mr. Le Caer's estate filed with
respondent a "Notice of Section 2056 Schedule M Protective
Claim". Mr. Le Caer's estate made the protective claim "to
preserve * * * the placing of and claiming of the personal
residence on * * * [Mr. Le Caer's] Schedule M".

On December 21, 2007, both estates timely filed petitions.

## *Discussion*

### I. *Contentions of the Parties*

The dispute in these consolidated cases arises from the
close-in-time deaths of Mr. and Mrs. Le Caer. Mr. Le Caer's
estate reported and paid Federal and State estate taxes of
$225,000. Mrs. Le Caer's estate contends that it is entitled
to claim this full amount as a credit for tax on prior transfers

---

[8] After the concessions respondent does not assert any deficiency with respect to Mr. Le Caer's
estate.

under section 2013. Mrs. Le Caer's estate also claims in the amended Form 706 that it is entitled to reduce her taxable estate by $225,000 through an increase in allowable deductions. It asserts that after paying Mr. Le Caer's Federal and State estate taxes, Mrs. Le Caer received $225,000 less than her estate reported on the original Form 706 after she died. Petitioners also argue that the parties can use the QTIP election that Mr. Le Caer's estate filed as a part of the Rule 155 computations.

Respondent agrees that Mrs. Le Caer's estate is entitled to claim a credit for tax on prior transfers under section 2013. However, respondent disputes the credit amount of $225,000 and contends that because of the limitations prescribed by section 2013(b) and (c), only a portion of that amount is allowable. Respondent also disagrees that the State estate tax that Mr. Le Caer's estate paid qualifies for the credit. Respondent also disallowed the overpayment claim of Mrs. Le Caer's estate for lack of substantiation and on the ground that the claimed deduction for Mr. Le Caer's Federal and State estate taxes is not an allowable deduction under section 2053.

## II. *Analysis*

Generally, the Commissioner's determination is presumed correct, and the taxpayer bears the burden of proving that it is incorrect. Rule 142(a)(1); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Petitioners do not assert that the burden of proof shifts to respondent under section 7491(a), and the record does not allow us to conclude that the requirements of section 7491(a)(2) are met. Accordingly, the burden of proof remains with petitioners.

### A. *Section 2013 Issues*

Section 2001(a) imposes a tax on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States. Sections 2010 through 2015 allow an estate to claim certain credits against the estate tax.

One of the allowable credits is the credit for tax on prior transfers under section 2013. Section 2013(a) provides for a credit against estate tax liability of a decedent's estate where

the decedent received property in a transfer from a person who died within 10 years before or 2 years after the decedent's death and the transfer is subject to estate tax in the transferor's estate.[9] See also *Estate of Harrison v. Commissioner*, 115 T.C. 161, 164 (2000); sec. 20.2013–1(a), Estate Tax Regs. The purpose of the credit is "'to prevent the diminution of an estate by the imposition of successive taxes on the same property within a brief period.'" *Estate of Harrison v. Commissioner*, *supra* at 164–165 (quoting S. Rept. 1622, 83d Cong., 2d Sess. 122 (1954)). The amount of the credit depends, in part, on the length of time that elapsed between the deaths of the decedent and the transferor. See sec. 2013(a). If the transferor died within 2 years of the death of the decedent, the decedent's estate may claim as a credit the amount determined under section 2013(b) and (c). *Id.* If the transferor predeceased the decedent by more than 2 years but within 10 years, the credit is determined as a percentage of the amount determined under section 2013(b) and (c). See *id.* The percentage gradually decreases as the time between deaths increases. See *id.*

The parties agree that Mrs. Le Caer's estate is entitled to claim a credit under section 2013 but disagree as to the amount. Respondent believes that the limitations of section 2013(b) and (c) apply and also believes that Nevada estate tax does not qualify for the credit. We agree with respondent.

Section 2013(b) and (c) sets forth two limitations on the allowable credit. The first limitation is the amount of the Federal estate tax attributable to the transferred property in the transferor's estate.[10] See sec. 2013(b); secs. 20.2013–1(b)(1), 20.2013–2, Estate Tax Regs. This limitation equals the value of transferred property multiplied by the transferor's adjusted Federal estate tax divided by the transferor's adjusted taxable estate. See sec. 2013(b); sec. 20.2013–2(a), Estate Tax Regs. For purposes of this limitation, the phrase "adjusted Federal estate tax" means the amount of Federal

---

[9] In our sec. 2013 discussion, Mr. Le Caer's estate is the transferor's estate and Mrs. Le Caer is the decedent.

[10] Sec. 2013(b) provides:

SEC. 2013(b). COMPUTATION OF CREDIT.—Subject to the limitation prescribed in subsection(c), the credit provided by this section shall be an amount which bears the same ratio to the estate tax paid * * * with respect to the estate of the transferor as the value of the property transferred bears to the taxable estate of the transferor (determined for purposes of the estate tax) decreased by any death taxes paid with respect to such estate. * * *

estate tax paid with respect to the transferor's estate plus certain credits allowed the transferor's estate.[11] See sec. 2013(b); sec. 20.2013–2(b), Estate Tax Regs. The phrase "transferor's adjusted taxable estate" means the amount of the transferor's taxable estate decreased by the amount of any "death taxes", including Federal and State estate taxes, paid with respect to the transferor's gross estate.[12] See sec. 20.2013–2(c)(1), Estate Tax Regs.

The second limitation is the amount of the Federal estate tax attributable to the transferred property in the decedent's estate. See sec. 2013(c); secs. 20.2013–1(b)(2), 20.2013–3, Estate Tax Regs. The credit is limited to the difference between (1) the net estate tax payable with respect to the decedent's estate, determined without regard to any credit under section 2013, and (2) the net estate tax determined as described immediately above but computed by subtracting from the decedent's gross estate the value of the property transferred adjusted by any charitable deduction, if applicable.[13] See sec. 20.2013–3(a), Estate Tax Regs. The credit for tax on prior transfers is limited to the smaller of the two limitations. Sec. 20.2013–1(b), Estate Tax Regs.

On both the original and the amended Forms 706, Mrs. Le Caer's estate claimed as a credit against prior transfers $225,000, which equals the sum of the Federal and State estate taxes that Mr. Le Caer's estate paid. Mrs. Le Caer's estate calculated the credit amount without taking into account section 2013(b) and (c). Petitioners contend that the only portion of Mr. Le Caer's estate that was subject to estate tax was the nonmarital portion of share B in the amount of $495,000. In petitioners' view, the limitations on

---

[11] The parties do not contend any of these credits are relevant.

[12] The regulations also provide that the amount of exemption allowed in computing the transferor's taxable estate must be added to the transferor's taxable estate. See sec. 20.2013–2(c)(1), Estate Tax Regs. Unlike sec. 2013, sec. 20.2013–2(c), Estate Tax Regs., does not reflect the repeal of sec. 2052, I.R.C. 1954, that had provided for such exemption. See Tax Reform Act of 1976, Pub. L. 94–455, sec. 2001(a)(4), (c)(1)(C)(i), 90 Stat. 1848, 1850 (repealing specific exemption under sec. 2052 and amending sec. 2013(b)).

[13] The Code sets out the second limitation in sec. 2013(c)(1):

SEC. 2013(c). LIMITATION ON CREDIT.—

  (1) IN GENERAL.—The credit provided in this section shall not exceed the amount by which—

    (A) the estate tax imposed by section 2001 or section 2101 (after deducting the credits provided for in sections 2010, 2012, and 2014) computed without regard to this section, exceeds

    (B) such tax computed by excluding from the decedent's gross estate the value of such property transferred and, if applicable, by making the adjustment hereinafter indicated.

the tax credit are not triggered when Mr. Le Caer passed no other property subject to the estate tax. We disagree. Section 2013(a) provides: "If the transferor died within 2 years of the death of the decedent, the credit shall be *the amount determined under subsections (b) and (c)*." (Emphasis added.) Nothing in section 2013 or the regulations thereunder conditions the application of the limitations of section 2013(b) and (c) as proffered by petitioners, and we conclude both limitations apply.

Petitioners also challenge respondent's method of calculating the limitation amount on the ground that by using the amount of the taxable estate respondent effectively denies the full amount of credit. We understand petitioners' argument to focus on the mechanics of calculating the first limitation, specifically, the amount used as the denominator in the formula. In petitioners' view, for purposes of the calculation, Mr. Le Caer's taxable estate should be reduced by the "$1,500,000 applicable credit amount" [14] because this amount bore no estate tax "[yielding] the reality of only $495,000 being taxed".

We reject petitioners' argument. To compute the first limitation, section 2013(b), as interpreted by section 20.2013–2, Estate Tax Regs., uses as the denominator the amount of "the taxable estate of the transferor (determined for purposes of the estate tax)" minus death taxes paid with respect to such estate. Section 2051 defines "taxable estate" as the gross estate minus certain enumerated deductions (for example, a marital deduction). Section 2013(b) does not authorize deducting from the taxable estate of the transferor the applicable exclusion amount or any other amount besides death taxes.

Our conclusion finds support in the changes that section 2013(b) underwent in 1976. Before 1976 section 2013 was titled "Credit for Tax on Prior Transfers" and section 2013(b) described a limitation on the amount of the credit. Section 2013(b) of the 1954 Code provided that the taxable estate of the transferor should be decreased by any death taxes paid with respect to such estate. This portion of the formula was similar to that set forth in the current section 2013(b). How-

---

[14] Petitioners apparently refer to the exclusion amount of $1,500,000 applicable in the case of estates of decedents dying during 2004. See sec. 2010(c). Such applicable exclusion amount corresponds to the applicable credit amount of $550,800. See secs. 2010(c), 2001(c).

ever, section 2013(b) of the 1954 Code provided that the taxable estate should then be increased by the exemption provided by section 2052 or 2106(a)(3) or by the corresponding provisions of prior laws. In 1976 Congress repealed the exemption under section 2052 and enacted section 2010, which introduced a unified credit. See Tax Reform Act of 1976, Pub. L. 94–455, sec. 2001(a)(2), (4), 90 Stat. 1848. By the same public law Congress amended section 2013(b) to strike out the phrase "and increased by the exemption provided for by section 2052 or section 2106(a)(3)." [15] *Id.* sec. 2001(c)(1)(C)(i), 90 Stat. 1850. Notably, Congress did not amend section 2013(b) to reflect the newly enacted unified credit in the calculation. [16] Accordingly, we conclude that in computing the taxable estate of the transferor Mrs. Le Caer's estate is not entitled to subtract the applicable exclusion amount from her taxable estate.

Mrs. Le Caer's estate also contends that it is entitled to claim a section 2013 credit with respect to the Nevada estate tax that Mr. Le Caer's estate paid. Mrs. Le Caer's estate argues that Nevada estate tax is a pure pickup or sponge tax [17] consisting of actual Federal estate tax but allocated to Nevada and accordingly it qualifies for credit under section 2013.

We first consider the nature of the Nevada estate tax. Generally, estates of decedents dying before December 31, 2004, can credit the Federal estate tax with the amount of any State death taxes. Sec. 2011(f). Nevada imposes a tax on the transfer of the taxable estate of a Nevada resident in the amount of the maximum credit allowable against the Federal estate tax for the payment of State death taxes. See Nev. Rev. Stat. Ann. sec. 375A.100 (LexisNexis 2007). Therefore, Nevada estate tax is a pickup or sponge tax, as petitioners correctly point out. However, the method of calculating

---

[15] The U.S. Department of the Treasury did not amend sec. 20.2013–2(c), Estate Tax Regs., which was promulgated before 1976, see T.D. 6296, 1958–2 C.B. 432, 456, to reflect the repeal of sec. 2052.

[16] In 1997 Congress amended sec. 2010(a). See Taxpayer Relief Act of 1997 (TRA 1997), Pub. L. 105–34, sec. 501, 111 Stat. 845. Before TRA 1997, sec. 2010(a) allowed each estate a credit of a specified amount. See sec. 2010(a), I.R.C. 1986. After TRA 1997, sec. 2010(a) allows each estate "a credit of the applicable credit amount" which is determined by reference to the applicable exclusion amount specified in sec. 2010(c). See sec. 2010(a), (c). Our analysis is not affected by the change in sec. 2010(a).

[17] A pickup or sponge tax is a State death tax that is levied in an amount equal to the Federal estate tax credit. See Black's Law Dictionary 1596 (9th ed. 2009).

Nevada estate tax does not make it a Federal estate tax. Although estates compute the amount of Nevada estate tax by reference to the available Federal estate tax credit, it is the State of Nevada that imposes the tax. See *id.* On the other hand, the Federal estate tax is imposed by section 2001 of the Code.

Section 2013(a), however, allows a credit only for Federal estate tax paid, regardless of whether the State tax is calculated by reference to the Federal tax. If Congress desired to extend the credit to amounts paid as State death taxes, it would not have used the phrase "Federal estate tax". The phrase "Federal estate tax" in section 2013(a) contrasts with the broader wording of section 2013(b), which addresses the computation of the first limitation. Section 2013(b) provides that in calculating the denominator, "any death taxes" paid should be subtracted from the taxable estate of the transferor. Death taxes include Federal estate tax and all other death taxes imposed by any taxing authority, within or without the United States. See sec. 20.2013–2(c)(1), Estate Tax Regs. Section 2013(a), on the other hand, refers only to the Federal estate tax. We conclude that Mrs. Le Caer's estate may not claim a section 2013 credit with respect to the State estate tax.

Petitioners argue that the application of the credit under section 2013 amounts to a denial of due process and a taking without just compensation, results in double taxation, contradicts the legislative intent of section 2013, and is discriminatory. Petitioners do not explain these arguments, nor do they cite any authority for the propositions. Although petitioners' argument is not entirely clear, we understand petitioners' argument to raise a challenge to respondent's application of the limitations contained in section 2013(b) and (c) and not to section 2013 or the Federal estate tax in general. Petitioners are contending, in effect, that respondent's calculation of the credit under section 2013 results in double taxation and contradicts the legislative intent of section 2013.

Generally, the plain meaning of statutory language is conclusive, and we normally examine the statute's legislative history only if the statute is ambiguous. See *Burlington N. R.R. v. Okla. Tax Commn.*, 481 U.S. 454, 461 (1987). Petitioners, however, do not identify any ambiguity in section

2013. Instead, they complain about the unfairness of section 2013 as enacted and assert that this Court should remedy the unfairness by giving the estate a credit for which there is no statutory foundation. We reject this argument for several reasons. First, petitioners have failed to identify any unfairness in the application of section 2013 that would render the limitations under section 2031(b) and (c) unconstitutional; and second, petitioners' concern about unfairness is more appropriately addressed to Congress than to this Court, which is required to apply the statute as written.

Petitioners argue, alternatively, that in the event we hold that the limitations of section 2013(b) and (c) apply, as we do, the value of the property interest transferred to Mrs. Le Caer by Mr. Le Caer's estate for purposes of calculating the section 2013 credit should be $495,000 [18] and not the present value of a life estate. Petitioners point out that Mr. Le Caer's estate paid estate tax on the $495,000 amount and not on the present value of the life estate received by Mrs. Le Caer. In making this argument, petitioners ignore the language of section 20.2013–4, Estate Tax Regs. Mrs. Le Caer received a limited property interest in the form of a life estate in share B. Section 20.2013–4(a), Estate Tax Regs., provides that if the decedent receives a limited interest such as a life estate in property that was included in a transferor's gross estate, the value of the interest is determined as of the date of the transferor's death on the basis of recognized valuation principles.

Petitioners do not dispute that Mrs. Le Caer received a life estate, and they have offered no credible evidence that respondent incorrectly determined the value of the life estate in calculating the section 2013(b) and (c) limitations or the allowable section 2013 credit. Consequently, we sustain respondent's determination regarding the amount of the credit allowable under section 2013.

B. *Overpayment Claim*

In the amended return Mrs. Le Caer's estate increased allowable deductions by $225,000 and claimed an overpayment of $101,700. The estate contended that Mrs. Le Caer

---

[18] The $495,000 amount is the amount of share B of the trust that did not qualify for the marital deduction.

had paid $225,000 of Federal and State taxes with respect to Mr. Le Caer's estate and that his estate was not reduced by the tax liabilities. Respondent disallowed the overpayment claim on the ground that a deduction for Federal estate taxes of Mrs. Le Caer's predeceased spouse's estate was not an allowable deduction under section 2053. On brief petitioners contend that in the original Form 706 Mrs. Le Caer's gross estate was overstated by $225,000 because Mr. Le Caer's estate paid estate taxes for his estate totaling $225,000. Petitioners claim: "Marie did not receive such $225,000 she only received the balance of the nonmarital property $270,000 ($495,000 − 225,000). Accordingly, her gross estate was overstated by $225,000". Respondent counters that this version of petitioners' overpayment claim should be disallowed because of lack of substantiation.

Regardless of whether petitioners seek to reduce the overall estate tax burden on Mrs. Le Caer's estate by reducing the gross estate by $225,000, as their opening brief suggests, or by increasing the allowable deductions by $225,000, as the amended Form 706 reports, [19] the overpayment claim is not allowable. Petitioners failed to prove that the value of Mrs. Le Caer's estate was overstated. Petitioners did not introduce any evidence to show that the Federal and State estate taxes with respect to Mr. Le Caer's estate were in fact paid with assets of Mrs. Le Caer or of her estate or that the Form 706 filed on behalf of Mrs. Le Caer's estate incorrectly reported the estate's assets. Moreover, a review of the cashflow resulting from the sale of real estate by Mr. Le Caer's estate and Mrs. Le Caer suggests that Mr. Le Caer's estate's share of the sale proceeds from the sale of real estate

[19] On brief petitioners insist that $225,000 is a reduction of the gross estate rather than a deduction, whereas in the amended Form 706 Mrs. Le Caer's estate claimed a $225,000 increase in allowable deductions. Generally, sec. 2053(a) allows as deductions from the value of the gross estate amounts for (1) funeral expenses, (2) administration expenses, (3) claims against the estate, and (4) unpaid mortgages or any indebtedness in respect of property, where the value of the decedent's interest therein is included in the value of the gross estate undiminished by such indebtedness or mortgage. Mrs. Le Caer, as a transferee of Mr. Le Caer's estate, could have become personally liable for any unpaid estate tax with respect to Mr. Le Caer's estate. See sec. 6324(a)(2). However, such liability would have arisen only if the estate tax imposed on Mr. Le Caer's estate was not paid when due. See *id.* Mr. Le Caer's estate's Federal estate liability was paid on Oct. 19, 2004, and the payment was timely. Accordingly, Mrs. Le Caer's estate is not entitled to increase allowable deductions by $225,000.

The record contains a jointly stipulated Form 843, Claim for Refund and Request for Abatement, that the trustees filed with respect to the Estate of Mr. Le Caer, dated Oct. 5, 2007. Petitioners argue on brief that the Form 843 sets forth a reduction of Mrs. Le Caer's gross estate. The Form 843, however, was filed with respect to Mr. Le Caer's gross estate.

was most likely the source of payment of the estate taxes and, to the extent so used, was not transferred to or otherwise included in Mrs. Le Caer's estate.

The pertinent timeline supports our conclusion. Mr. Le Caer's estate filed the Form 706 on October 19, 2004. The return reported a Federal estate tax liability of $200,190. The checks that paid the Federal and Nevada estate tax liabilities were dated October 12, 2004. A representative of Mrs. Le Caer's estate signed the original Form 706 on November 4, 2004. As of November 4, 2004, the trustees knew the value of Mr. Le Caer's estate that passed, net of estate taxes, to Mrs. Le Caer and the remaindermen.

### C. *QTIP Protective Election*

Petitioners contend that Mr. Le Caer's estate filed a marital deduction, or QTIP, protective claim that can be applied as part of the Rule 155 calculations. Respondent contends the "protective claim" is invalid.

Generally, an estate may deduct from the value of the gross estate the value of property passing from the decedent to his or her surviving spouse (marital deduction). See sec. 2056(a); sec. 20.2056(a)–1(a), Estate Tax Regs. The Code does not allow a marital deduction for terminable interest property passing from a decedent to his or her surviving spouse (terminable interest rule). Sec. 2056(b). A terminable interest is an interest passing from a decedent to his or her surviving spouse that will end on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur. Sec. 2056(b)(1). The terminable interest rule denies a marital deduction if (1) an interest passing to the surviving spouse is a terminable interest, (2) an interest in such property passes from the decedent to someone other than his or her surviving spouse for less than full or adequate consideration in money or money's worth, and (3) the third person will possess or enjoy the property after the termination or failure of the interest passing to the surviving spouse. *Id.*

Section 2056(b)(7) provides for an exception to the terminable interest rule for QTIP. It allows a marital deduction for QTIP although the surviving spouse receives only an income interest. Under section 2056(b)(7) a decedent may

pass to his or her surviving spouse an income interest in property for his or her spouse's lifetime. After the death of the surviving spouse the property passes to the beneficiaries designated by the first spouse to die. Three requirements must be met for terminable interest property to qualify as QTIP: (1) The property passes from the decedent, (2) the surviving spouse has a qualifying income interest for life in the property, and (3) the executor of the estate of the first spouse to die makes an affirmative election to designate the property as QTIP. Sec. 2056(b)(7)(B). Upon the death of the surviving spouse, the value of his or her gross estate includes the value of QTIP.

The executor of the estate must make the QTIP election with respect to property on the decedent's "return of tax imposed by section 2001." Sec. 2056(b)(7)(B)(v). A "return of tax imposed by section 2001" means the last estate tax return filed by the executor on or before the due date of the return, including any extensions. Sec. 20.2056(b)–7(b)(4)(i), Estate Tax Regs. If the estate does not file a timely return, this phrase means the first estate tax return filed by the executor after the due date. *Id.*

An executor of the estate of the first spouse to die may make a protective election to treat property as QTIP if the executor reasonably believes that there is a bona fide issue when the Federal estate tax return is filed and it concerns whether an asset is includable in the decedent's gross estate or the amount or nature of the property the surviving spouse is to receive. Sec. 20.2056(b)–7(c)(1), Estate Tax Regs. The protective election must identify the specific asset, group of assets, or trust to which the election applies and the specific basis for the protective election. *Id.*

The regulations explain in detail the time and manner for making the QTIP election and do not specify a different time and manner for a protective QTIP election. It is reasonable to conclude, therefore, that a timely protective election is one that is made with respect to property on a decedent's return of tax imposed by section 2001 as required by section 2056(b)(7)(B)(v) and section 20.2056(b)–7(b)(4)(i), Estate Tax Regs. This conclusion is consistent with section 20.2056(b)–7(c)(2), Estate Tax Regs., which provides that "The protective election, once made *on the return of tax imposed by section 2001*, cannot be revoked." (Emphasis added.) Applying the

definition of the "return of tax imposed by section 2001" under section 20.2056(b)–7(b)(4)(i), Estate Tax Regs., in the case of a timely filed return, such as Mr. Le Caer's Form 706, the executor of the estate may make a protective election no later than the due date of the return. Generally, the due date of the return is 9 months after the date of the decedent's death. Sec. 6075(a).

Mr. Le Caer died on January 19, 2004. The due date of his return was October 19, 2004, which is when the Form 706 was mailed. The trustees of Mr. Le Caer's estate made an election under section 2056(b)(7) with respect to $1,405,295 of the assets that were a part of share B, thereby qualifying that property for a marital deduction. The trustees did so by filing Schedule M, Bequests, etc., to Surviving Spouse, along with the Form 706. On October 19, 2007, the attorney for Mr. Le Caer's estate filed a document entitled "Notice of Section 2056 Schedule M Protective Claim". Because the protective election was filed 3 years after October 19, 2004, and was not made on the Form 706 as required by section 2056, we conclude the protective election was untimely.

We have considered all of the arguments raised by either party, and to the extent not discussed, we find them to be irrelevant or without merit.

To reflect the foregoing,

> *Decision will be entered for petitioner in docket No. 29631–07.*

> *Decision will be entered under Rule 155 in docket No. 30041–07.*